THE HARTFORD INSURANCE GROUP, AKA HARTFORD FIRE INSURANCE COMPANY, AKA HARTFORD ACCIDENT AND INDEMNITY COMPANY, AN INSURANCE CORPORATION, APPELLANT, *v.* EUGENE WINKLER, INDIVIDUALLY; JACQUELINE WINKLER, INDIVIDUALLY; AND JACQUELINE WINKLER, AS GUARDIAN AD LITEM FOR CONNIE WINKLER, BLAKE WINKLER, AND TERESA WINKLER, MINORS, RESPONDENTS.

No. 6924

April 2, 1973                                   508 P.2d 8

*Rose, Norwood, and Edwards* and *Roger L. Hunt,* of Las Vegas, for Appellant.

*Beckley, DeLanoy & Jemison,* of Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal from an order of the district court denying

appellant's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. NRCP 50(b).[1]

The Winklers, who are the respondents on appeal and who were the plaintiffs below, commenced this action against the appellant, the Hartford Insurance Group, as a second insurer of Tonya Webb, to recover damages the Winklers suffered when the vehicle in which they were riding was struck by an automobile driven by Tonya but owned by her parents, Mr. and Mrs. Archie Hughes. The Winklers first sued Tonya. Her parents' insurer provided a defense and later offered full policy limits in an effort to settle the case. Upon advice of her counsel, Tonya stipulated that judgment be entered in favor of the Winklers and against her and that the policy limits of her parents' insurer be accepted as partial satisfaction of the judgment. Additionally, Tonya assigned to the Winklers whatever rights she had under the policy of her former husband, Edward Webb, in exchange for the Winklers' agreement not to levy execution on any of Tonya's property, but to look solely to the policy for recovery on the judgment.[2]

Hartford initially denied liability on the ground that Tonya was not a resident of her husband's household at the time of the accident, and later upon the additional ground that Tonya was not driving a "nonowned" vehicle when she struck the Winklers' car. A jury trial was held on the issue of whether Tonya Webb was covered under her former husband's policy. The jury found that Tonya was so covered and returned a verdict in favor of the Winklers for $58,450.

After the jury's verdict was returned, appellant moved for a judgment notwithstanding the verdict or, in the alternative, for

---

[1]NRCP 50(b):

"(b) *Motion for Judgment Notwithstanding the Verdict.* Not later than 10 days after service of written notice of entry of judgment, a party, whether or not he has moved for a directed verdict, may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned, such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

[2]Edward and Tonya were still married at the time of the accident, but they were divorced soon thereafter.

a new trial. The motion was predicated upon Hartford's contentions that Tonya Webb was barred as a matter of law from recovery under the policy because (1) Tonya was not a named insured at the time of the accident, since she was not then a resident of her husband's household and (2) if she were, she was precluded from recovery because she was not operating a nonowned vehicle when the accident occurred.

Edward and Tonya were married on December 24, 1963, and they took up residence in Arizona. During the latter part of March or early April 1965, Tonya visited her parents in Mesquite, Nevada. While she was visiting her parents, she filed for a divorce in Nevada, on May 13, 1965. On June 25, 1965, after the divorce action had been filed, but before the divorce was granted, Tonya, while driving her parents' car in Utah, failed to heed a stop sign at a highway intersection and collided with the Winkler vehicle. Tonya and Edward were divorced on August 16, 1965.

After their marriage, Edward applied to Hartford for an insurance policy in his and Tonya's names. The policy was issued on January 8, 1964, in the name of Edward only.[3] The policy was purchased with funds of the community. It was Edward's intention to obtain coverage for Tonya as well as for himself. The premium was the same whether or not Tonya was specifically named therein as an insured. When the policy was issued, Tonya also received a card from Hartford indicating she was insured under the policy, as did Edward. The definition of the named insured as set forth in section 1, page 2, of the policy is as follows: " '[N]amed insured' means the individual or husband and wife named in Item 1 of the declarations, but if only one individual is named the term 'named insured' also includes his spouse, if a resident of the same household."

It would appear from the record that, even though Tonya was not specifically named as an insured in the policy when issued, she was covered at that time. Mr. James Burns, Hartford's expert witness, testified in substance that a wife would receive the same coverage as her husband, whether or not she was named in the policy, providing she was a resident of her husband's household at the time the policy was issued. Indeed, during oral argument, counsel for Hartford, upon questioning by the court, conceded that Tonya was a named insured within the provisions of the policy at the time of its issuance. It is only reasonable to assume that at the time the policy was written the

---

[3]The copy of the application produced by Hartford at trial indicated that Tonya's name had been crossed out, but there is nothing in the record to indicate who did so.

parties who purchased it believed that both of them were covered by the policy. In this case, the policy is silent as to when the wife had to be a resident of her husband's household. The trier of fact could properly conclude that, when the wife was a resident of the household at the time the policy was issued and the policy is silent as to the time the wife had to be a resident of her husband's household, she qualified as a "named insured" as long as she remained the husband's spouse. As the Arizona court declared in Eureka-Security Fire & Marine Ins. Co. v. Simon, 401 P.2d 759, 762–763 (Ariz.App. 1965), *rehearing denied June 10, 1965, review denied July 6, 1965:*

". . . The courts have said:

" 'Contracts of insurance are not to be construed to relieve insurance companies that write them from coverages broader than they intended and from coverages they would not advisedly have taken, if to do so is to leave one without protection who might reasonably be held to be within the policy's provisions. Contracts of insurance are always construed most strongly against the insurance company. Garnsky v. Metropolitan Life Insurance Co., 232 Wis. 474, 287 N.W. 731, 124 A.L.R. 1489; 32 C.J. 1152; 29 Am.Jur., Secs. 166–167.' Johnson v. Maryland Casualty Co., 4 Cir., 125 F.2d 337 at 340 (1942).

"Stated another way, a policy of insurance is to be construed liberally in favor of the insured and strictly against the insurer. North British & Mercantile Ins. Co. v. San Francisco Securities Corporation, 30 Ariz. 599, 249 P. 761 (1926), Maryland Cas. Co. v. Hoffman, 75 Ariz. 103, 252 P.2d 82 (1952). It has been stated that the reason for this rule is that the insured usually has no choice in the selection or means employed in drafting insurance contracts, and that because these contracts are drawn and selected with great care and deliberation by expert legal advisers either employed by or acting exclusively in the interest of the insurance company, any ambiguity or uncertainty therein is the fault of the insurer. Berry v. Acacia Mutual Life Ass'n, 49 Ariz. 413, 67 P.2d 478 (1937)."

In this case the trial judge so instructed the jury, and properly so.[4]

---

[4]Instruction 19 provided as follows:

"The language of an insurance policy should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean. If the contract was prepared by the insurer and contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the insured will be adopted."

In Aetna Casualty and Surety Company v. Miller, 276 F.Supp. 341 (D.Kan. 1967), a policy was issued only in the name of the husband. At the time of the accident a divorce was pending between the husband and wife, and they were living in different states. In Aetna, the court held as a matter of law, quoting from Cal-Farm Insurance Company v. Boisseranc, 312 P.2d 401 (Cal.App. 1957), that the term "resident" had no absolute meaning, and that the meaning varied according to circumstances. Accordingly, the federal court in Kansas said that the wife was a resident of the same household as her husband at the time of the accident. At 347, 348, the federal court stated:

"Other cases in point [besides Cal-Farm] are Olson v. Standard Marine Insurance Co., 109 Cal.App.2d 130, 240 P.2d 379; Mazzilli v. Accident & Casualty Ins. Co., 35 N.J. 1, 170 A.2d 800; Central Manufacturers' Mutual Ins. Co. of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557.

"The Court has no difficulty in concluding, as a matter of law under the factual situation here posed and well-grounded court decisions, the particular provisions of the automobile liability insurance policy before the Court are ambiguous, uncertain and equivocal in phraseology, and thus incapable of uniform connotation.

". . .

"One of the great shames of American society is the ever-increasing divorce rate and breakup of families which lead to increased crime, social and economic irresponsibility, and a lessening of the moral fiber of good citizenship. Couple this with the population explosion and great increase in motor vehicle traffic in a mobile-minded nation. If it were necessary as a condition precedent to driving an automobile on a public highway under the protection of the Financial Responsibility law, to examine the marital status of every driver to find out whether he was married, divorced or separated temporarily from his fireside, bed and spouse, by duty, business, or a family quarrel, no citizen using the highway could ever reasonably expect to be protected by the other motorists' compliance with the state laws requiring the carrying of automobile liability insurance.

"This Court does not believe that an insurance company, doing business as a quasi-public institution, can or should be able to avoid liability under ambiguous provisions of a policy—by attempting to require the spouse of the policy owner as an

'insured' to remain under the same roof and in the same physical household during the legal existence of a marriage. Neither does this Court believe it is incumbent upon a user of the highways to conduct a 'bed check' to see if another motorist is fully and safely insured by the fact that conjugal bliss is present in his home at the time."

The jury could properly conclude that Tonya was a named insured under the provisions of the policy at the time of the accident.

We turn to consider Hartford's contention that, even if Tonya was covered by her prior husband's policy, she is barred from recovery in this case because she was not driving a nonowned automobile at the time of the accident. The policy provided coverage for those insured thereunder when operating a nonowned vehicle. A nonowned vehicle is described in the policy as one not owned by, or furnished to, or available for the regular use of, either the named insured or a resident of the same household.

Tonya had been living with her parents about 3 months when the accident occurred. Ann Hughes, Tonya's mother, testified that Tonya seldom used the car. Tonya, on the other hand, testified that she used the car often when in Mesquite prior to leaving for summer school in Utah. There was only one key for the car. Tonya, if using the car other than about town in Mesquite, had first to obtain her parents' permission. There was no testimony as to any usage by Tonya during the month of June, when she and her mother attended summer school in Utah. It was on their first trip home from summer school that Tonya, accompanied by her mother, had the accident.

While past use of an automobile is relevant in determining whether the automobile was regularly available to Tonya, the critical time period would be the month of June. In American Casualty Co. v. Lattanzio, 188 A.2d 637, 641 (N.J.App. 1963), the court stated:

". . . Evidence as to the past history of the use of the automobile is of assistance in determining whether there was such an arrangement, but it is the condition which obtained at the time of the accident which governs, and evidence of the past use of the automobile must be related to this date."

The single fact that Tonya did not have a key to the automobile and was required to obtain permission to use the automobile is in itself sufficient to support a finding that the automobile was not available for her regular use. American Casualty Co. v. Lattanzio, *supra,* continues, at 641:

". . . A requirement that specific authorization be obtained as a prerequisite to the use of the vehicle would sustain a finding that it was not 'furnished' for his regular use. Likewise, evidence that the insured was without access to the vehicle or the keys required to operate it, would constitute strong evidence to the same effect. Assuming that the vehicle was furnished to him, it would remain to be determined whether it was furnished for his regular use. If the use for which the vehicle was furnished was an irregular, infrequent or casual one, it would not come within the exclusionary clause and hence would be covered by the policy."

In the case of Motorists Mutual Ins. Co. v. Sandford, 221 N.E.2d 596, 597 (Ohio App. 1966), the court defined "regular":

" 'Regular,' as defined by Webster's New International Dictionary, means constant, systematic. It has been defined as steady, methodical."

The term "regular use" also has been defined by the Arizona court in Travelers Indemnity Company v. Hudson, 488 P.2d 1008, 1012 (Ariz.App. 1971):

". . . The phrase 'regular use' is undefined in the policy. However, the term denotes continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use. . . ."

In the instant case, it cannot be said as a matter of law that Tonya was not driving a nonowned vehicle at the time of the accident and thus was barred from recovery. We conclude, therefore, that the trial judge's finding that Tonya was not precluded from recovery under the policy as a matter of law was proper and correct.

Hartford next complains that the trial judge improperly instructed the jury. Although conceding the propriety of Instruction 19, *supra,* appellant urges that that instruction should have been amplified by Proposed Instruction D–2, which provided as follows:

"However, if you determine that the language of the insurance policy is clear and unambiguous, then the policy of insurance must be construed according to the ordinary, plain meaning as would to any type of contract. You must then

determine the facts as they exist in this case and apply them to the contract as you find it."

We do not agree. Instruction 19 properly stated the law governing the issue involved. Eureka-Security Fire & Marine Ins. Co. v. Simon, 401 P.2d 759 (Ariz.App. 1965), *supra.* Proposed Instruction D–2 added nothing thereto, and it was proper to reject it.

Additionally, appellant argues that the trial judge erred in refusing to give Proposed Instructions D–3 through D–7.[5] The judge did give, without objection, Instruction 19–B, which read as follows:

---

[5] Proposed Instruction No. D–3:

"In considering this case, you must consider all facts to determine whether or not Tanya [sic] Hughes Webb Cromer fits within the policy definitions as set forth in the policy of insurance present in this case. If you find that on June 25, 1965 she did not qualify under certain of the policy definitions, then in that event you must find for the Defendant."

Proposed Instruction No. D–4:

"In considering this case, you must determine whether or not Tanya [sic] Hughes Webb [Cromer] was the insured as set forth by the definition of the policy. You must further determine whether the automobile she was driving on the day of the accident, July [sic] 25, 1965, was a non-owned vehicle as defined by the policy. If you determine under the facts that Tanya [sic] Hughes Webb [Cromer] was not a named insured or was not driving a non-owned automobile as defined by the terms of the policy of insurance issued by the Defendant, Hartford Insurance Group, then you must find for the Defendant."

Proposed Instruction No. D–5:

"In considering this case, you must determine whether or not Tanya [sic] Hughes Webb Cromer fits within the policy definitions of a named insured and was driving a non-owned automobile as defined by the said policy. If after considering the facts you find that the policy of insurance does not cover her with respect to either or both of the said definitions, then your determination must be for the Defendant."

Proposed Instruction No. D–6:

"You are instructed that the definition of 'non-owned automobile' is as follows:

" ' "Non-Owned automobile" means an automobile not owned by or furnished or available for the regular use of either the named insured or any resident of the same household, and includes, while used therewith, a home trailer not owned by the named insured or a utility trailer, but "non-owned automobile" does not include a temporary substitute automobile.'

"If you find that Tanya [sic] Hughes Webb Cromer was not driving a vehicle within the above definition of 'non-owned automobile', then you must find for the Defendant."

Proposed Instruction No. D–7:

"In considering this case, you must determine whether Tanya [sic] Hughes Webb Cromer fits within the policy definition of 'named

"In order for the Plaintiffs to recover in the present action, Plaintiffs must establish that on June 25, 1965, the time of the Winkler accident, Tonya Webb was entitled to the insurance coverage afforded to a named insured operating a non-owned vehicle within the meaning of the Hartford policy admitted into evidence."

Proposed Instructions D–3 through D–7 covered in general the same ground as Instruction 19–B. It is not error for a trial judge to refuse additional instructions that cover the same ground as an instruction already given. Eikelberger v. State ex rel. Dep't of Hwys., 83 Nev. 306, 311, 429 P.2d 555, 558 (1967). Further, Proposed Instructions D–3 through D–7 are couched in the language of "formula" instructions. The use of formula instructions is described in Ivie v. Richardson, 336 P.2d 781, 786 (Utah 1959):

". . . This kind of instruction, sometimes referred to as a 'formula' instruction, which makes a recital in accordance with the contention of a party and ends with the conclusion: '* * * and if you so find, then your verdict must be for [the party]' is not generally a good type of instruction to give. This is so because it lends itself to the error just noted [it fails to take into account the possible contributory negligence of the party] and also because it tends to be argumentative rather than to set out the principles of law applicable to the issues impartially as to both parties. For such reasons it is better to avoid giving instructions of that type." (Footnote omitted.)

The jury had before it the insurance policy which was received in evidence. The policy, read in connection with Instructions 19, 19–A, and 19–B, fully advised the jury as to the issues and the burden of proof involved in the case.

We find no error in the manner in which the trial judge instructed the jury.

The remaining assignments of error have been fully considered, and we find them wholly lacking in merit. NRS 178.598.

The order of the district judge, denying appellant's motion

insured'. Such definition reads as follows: ' "named insured" means the individual or husband and wife named in Item 1 of the declarations, but if only one individual is named, the term "named insured" also includes his spouse, if a resident of the same household'. 'Item 1 of the declarations' reads as follows, 'Webb, Edward M., Box 639, Taylor, Arizona'.

"Whether Tanya [sic] Hughes Webb Cromer falls within the above definition is for you to determine. If you determine that she does not, you must find for the Defendant."

for a judgment notwithstanding the verdict or, in the alternative a new trial, is affirmed.

THOMPSON, C. J., and GUNDERSON, BATJER, and ZENOFF, JJ., concur.