339 So.2d 28 (1976)
Thomas A. HOBBS, Plaintiff-Appellee,
v.
FIREMAN'S FUND AMERICAN INSURANCE COMPANIES et al., Defendants-Appellants.
No. 5610.
Court of Appeal of Louisiana, Third Circuit.
October 21, 1976.
Rehearings Denied November 30, 1976.[*]
Writs Refused February 3, 1977.
*31 Ford & Nugent, by Howard N. Nugent, Jr., Alexandria, for plaintiff-appellee, Hobbs.
Gold, Hall, Hammill & Little, by Eugene Sues, Alexandria, for defendant-appellant, Fireman's Fund.
Allen, Gooch & Bourgeois, by Arthur Robison, Lafayette, for defendant-appellant, Reserve Insur. Co.
McLure & McLure, by John G. McLure, Alexandria, for defendant-appellee, Succ. of Lois Phillips.
William E. Skye, Alexandria, for defendant and third party plaintiff-appellant, Herman W. Phillips.
Stafford, Randow, O'Neal & Scott by Grove Stafford, Jr., Alexandria, Gist, Methvin & Trimble, by David A. Hughes, Alexandria, Polk, Foote, Randolph, Percy & Ledbetter, by J. Michael Percy, Alexandria, Hall, Coltharp & Lestage, by H. O. Lestage, III, DeRidder, for defendant-appellee.
Before HOOD, MILLER and WATSON, JJ.
MILLER, Judge.
Defendants (H. W. Phillips, his primary insurer Fireman's Fund American Insurance Company and his excess insurer third-party defendant Reserve Insurance Company, and the Succession of Lois Phillips) appeal the judgment holding them liable in solido to plaintiff Thomas A. Hobbs for $234,423.34 and ordering both insurers to pay $6,839.50 attorney fees to Phillips' attorney as the cost of his defense. Except for recasting the judgment to recognize that Reserve was not sued by Hobbs, and to tax Fireman's Fund with all court costs and for Phillips' attorney fees, we affirm.
This matter was first before us on appeal from a summary judgment dismissing Hobbs' claim. Hobbs v. Fireman's Fund American Insurance Company, 293 So.2d 608 (La.App. 3 Cir. 1974), writs denied, La., 296 So.2d 832.
*32 On November 28, 1971 Hobbs was severely injured while riding as a guest passenger in his father's Camaro Chevrolet which was being driven by Mrs. H. W. (Lois) Phillips. Southern Farm Bureau Casualty Insurance Company placed in the registry of court the $10,000 limits of coverage provided by its policy covering the Camaro. Hobbs sued Phillips and his primary insurer Fireman's Fund and the Succession of Lois Phillips. Phillips filed third-party actions against Fireman's Fund and his excess coverage insurer, Reserve, and claimed attorney fees from both Fireman's Fund and Reserve for his defense.

MOTION TO DISMISS APPEALS
H. W. Phillips' attorney moved to dismiss the appeals insofar as they relate to his third-party demands, urging three contentions: 1) The bond filed by Fireman's Fund is insufficient to cover all awards in the trial court's final judgment; 2) Reserve did not sign its bond; therefore this court is without jurisdiction; 3) Although both insurers appealed the May 11, 1976 judgment, the trial court had previously signed judgments holding both insurers liable for the cost of Phillips' defense; Phillips contends these judgments (of March 17, 1974 and July 9, 1975) were final judgments, and insurers failed to timely perfect appeals from those judgments. We reject all three.
The motions to dismiss the appeals were filed after the three-day delay provided by LSA-C.C.P. art. 2161. In this situation, we review only the jurisdiction of this court to hear the appeal or the right of the appeal itself. LSA-C.C.P. art. 2162.
The record does not indicate that the alleged defects in the bonds have been questioned prior to the filing of this motion to dismiss in this court. The sufficiency of Fireman's Fund's appeal bond should have been tried by rule to show cause in the trial court; this would have allowed appellants an opportunity to substitute a proper bond in the event the original bonds were found insufficient. LSA-C.C.P. art. 5123. The trial court retains jurisdiction for testing the validity or sufficiency of the bond. Appeals may not be dismissed on the ground of insufficient or defective bond unless the party who furnished the bond is first afforded an opportunity to furnish a new or supplemental bond (LSA-C.C.P. arts. 5123-5125) by proceedings filed in the trial court. LSA-C.C.P. art. 2088; Wilks v. Allstate Insurance Company, 191 So.2d 663 (La.App. 3 Cir. 1966), and cases cited therein at 191 So.2d 664.
The motion to dismiss Reserve's bond is predicated on the holding in Guilliot v. City of Kenner, 326 So.2d 359 (La.1976). It was there held that the Court of Appeal is empowered to determine whether what purports to be a bond is, in fact, a bond. In Guilliot, no one signed either the bond or the accompanying affidavits. In the instant case, the documents were signed by the surety on Reserve's bond. There is a bond, and the test of the alleged defects of that bond should have been made in the trial court. LSA-C.C.P. art. 5123, et seq.
Since the sufficiency and validity of the bonds were not contested in the trial court, the motion to dismiss the appeals on those grounds has no merit.
The third basis for dismissal is founded on two arguments. First, that although the trial court signed one final judgment on May 11, 1976, that judgment was in effect two judgmentsone on the main demand and one on the third-party demand. Mover relies on Perot v. United States Casualty Co., 98 So.2d 584 (La.App. 2 Cir. 1957). We distinguish Perot; in Perot, there were two separate judgments signed on different days. The appeal from the first judgment was not timely perfected. In the instant case there was only one trial, one opinion, one signed judgment (which disposed of both the main and third-party demands), and one order of appeal granted each appellant. The appeals were timely perfected as to all phases of the May 11, 1976 final judgment. Appeals are favored and will not be dismissed for technicalities. McCann v. Todd, 201 La. 953, 10 So.2d 769 (1942).
The second argument contends that the March 17, 1974 and July 9, 1975 judgments *33 (holding that the insurers would be responsible to Phillips for his cost of defending the claim) were final judgments. We reject that contention because those were interlocutory judgments. LSA-C.C.P. art. 1841.
Attorney's fees earned in connection with litigation on the main and/or third-party demand are preliminary matters and judgments relating to attorney's fees do not dispose of the merits of the claim. Anderson v. Southern Consumers Education Foundation, Inc., 196 So.2d 686 (La.App. 3 Cir. 1967). The preliminary judgments did not fix the number of hours worked by Phillips' attorney and did not aware a specific fee. Being interlocutory decrees which did not expose the insurers to irreparable harm, the decrees were not appealable at that time. LSA-C.C.P. arts. 1841, 2083. The first judgment which named a specific dollar aware for the attorney's fees was the May 11, 1976 judgment, and the appeals from that decree were timely perfected. The preliminary or interlocutory judgments had to await rendition of a final appealable judgment on the merits. People of Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752 (La.1968); Texas Gas Transmission Corp. v. Soileau, 251 So.2d 104 (La.App. 3 Cir. 1971).

ON THE MERITS
A summary of some of the facts brought out during the extended trial is necessary to understand the relationship of the litigants. Mr. and Mrs. Herman Wesley Phillips owned a valuable farm and lovely home located thereon in Walls, Mississippi just outside the city of Memphis, Tennessee. Over a long term, Mr. Phillips successfully operated his large trucking concern and his wife Lois was a key employee in the business. Their oldest child (about 21 years old at the time of this accident) is retarded; some two years before this accident, their second son, a teenager, was killed while driving his car; their teenage daughter is their third child. Shortly after their teenage son was killed, the Phillips employed Hobbs to help them look after their retarded son; Hobbs was about the age of their son who had been killed.
Because of Mr. Phillips' drinking problem Mr. and Mrs. Phillips had separated on at least three occasions prior to the September 17, 1971 separation which is particularly relevant here. During each of the prior separations Mrs. Phillips was well supported by her husband; she took the children with her and spent considerable time making special arrangements to care for their retarded son. Mrs. Phillips also attempted to continue working in her husband's trucking business, for her expertise was indispensible to the successful operation. Before the last separation the Phillips had discussed the favorable accommodations available for their retarded son near Mrs. Phillips' birthplace in Louisiana.
Hobbs lived in the Phillips' home in order to better care for their retarded son. Hobbs and the Phillips' teenage daughter began to interest one another; a continuing personal conflict arose between Hobbs and Mr. Phillips; that conflict together with Phillips' drinking problem precipitated the September 17, 1971 separation and the one before that.
On September 17, angry words were exchanged between Hobbs and Phillips in the course of which both parties were armed. The row ended in typical fashionMrs. Phillips packed some of her personal clothing and a few essential items and left. She took the retarded son with her in her new Chevrolet station wagon; her daughter came along in her own new Pontiac LeMans (both vehicles were listed in Phillips' insurance policies); and Hobbs came along in his father's Camaro which had been purchased for Hobbs use. The group drove to Mrs. Phillips' birthplace, Rapides Parish, Louisiana, and stayed with one of her brothers until she could rent a house. Upon arrival in Louisiana, Mrs. Phillips placed her retarded son in a special home for retarded children and enrolled her daughter in a trade school. She opened a checking account in an Alexandria bank and purchased some furniture from a local store. At Mrs. Phillips' request Mr. Phillips sent a *34 few items of furniture from their Mississippi home. Her Mississippi automobile license was about to expire so she purchased a Louisiana license plate and a Louisiana driver's license. In general, she established a home for her daughter and retarded son with Hobbs residing in the household to help look after the retarded son.
Before leaving Mississippi on September 17th, Mrs. Phillips filed criminal charges against her husband, which charges were later dismissed. She returned on September 23rd to file a claim for separate maintenance and she alleged she was a domiciliary of Mississippi at that time. That suit never came to trial and no proceedings were filed by either party to seek a judicial separation or divorce. Mr. Phillips sent $1,200 per month to Mrs. Phillips and in addition contacted, by telephone, a merchant near Mrs. Phillips' Rapides Parish home to arrange an unlimited charge account for his wife's use, and it was used by Mrs. Phillips. The Phillips talked by telephone frequently; Mr. Phillips urged reconciliation and Mrs. Phillips rejected his requests because of his drinking problem.
On the evening of November 27, 1971 Mrs. Phillips' teenage daughter was going out with some new friends. She left that evening with the understanding that she and her friends would be at one of three different night clubs in Avoyelles Parish. Mrs. Phillips and Hobbs went to a church dance along with the family of one of Mrs. Phillips' brothers. Late in the evening Mrs. Phillips attempted to locate her daughter by telephone, but the evidence indicates she could not find her. Mrs. Phillips was in Hobbs' Camaro and Hobbs was driving until they left the church dance. They returned to Mrs. Phillips' home looking for the teenage daughter. When they found no one home they drove to Avoyelles Parish to go to the night clubs where the teenage daughter might be located. They didn't find her at the first two and were on their way to the third night club when the accident occurred in Avoyelles Parish about 1 a.m. on November 28, 1971.
When the Camaro reached a slight left turn in the road, it was driven into the ditch to the right of the Camaro's forward motion. The front end struck a culvert and flipped the Camaro so that the back end then struck a second culvert some distance away (at which point Mrs. Phillips' purse was found) and the Camaro then crossed the road and ended up in the ditch on the other side. Both Mrs. Phillips and Hobbs were thrown out of the front seats; Mrs. Phillips' body came to rest on the trunk lid with her feet hanging in the back seat; Hobbs ended up in a sitting position between the seats with his feet facing the passenger side of the Camaro. As a result of her injuries Mrs. Phillips died within a few minutes after the accident, and Hobbs was severely and permanently injured.
Defendants H. W. Phillips, Fireman's Fund, Reserve, and the Succession of Lois Phillips have alleged numerous errors some are duplicated by the defendants and some are limited to their own situation. We will consider the errors specified by the various defendants in the following order:
1) The exception to venue existing in Rapides Parish should have been sustained.
2) Mrs. Phillips was not a "resident of the household" of Mr. Phillips for insurance purposes, and therefore there was no coverage by Fireman's Fund and Reserve.
3) Louisiana law should not be applied.
4) Mrs. Phillips was not on a community mission.
5) Mrs. Phillips was not driving.
6) Southern Farm Bureau should be cast for all costs of court and attorney fees.
7) Fireman's Fund and Reserve should not have been cast on the third-party demand because that demand was only for attorney's fees.
8) Fireman's Fund and Reserve should not have been cast for attorney's fees for that part of Phillips' defense relating to the coverage issue.
9) Prescription had run when the Succession of Lois Phillips was properly made a party defendant.
*35 10) Fireman's Fund's liability was improperly limited to its policy limits of $100,000; instead it should be held for court costs and for Phillips' attorney's fees in addition to its $100,000 of coverage.
11) The amount awarded Hobbs is excessive.
12) Hobbs is not entitled to judgment against Reserve on the main demand because Hobbs did not sue Reserve.

1
The trial court held that Mrs. Phillips was domiciled in Rapides Parish. Although a married woman's domicile is that of her husband (LSA-C.C. art. 39), she may establish a separate domicile if she is abandoned or leaves the matrimonial domicile as a result of serious misconduct on the part of her husband. This misconduct must be similar in nature to that necessary to support a suit for separation. Johnson v. Welsh, 334 So.2d 395 (La.1976); Morrison v. Morrison, 316 So.2d 453 (La.App. 3 Cir. 1975).
The trial court held that Mrs. Phillips left her Mississippi home following an altercation with her husband. He brandished a gun and threatened his entire family. After this altercation, Mrs. Phillips never returned to live in Mississippi. Without restating the conflicting evidence, there is sufficient evidence to support he conclusion that Mrs. Phillips had indeed established her home for herself and her two children in Rapides Parish.
It is further contended that Mrs. Phillips, being deceased, has no domicile; that according to the provisions of the direct action statute (LSA-R.S. 22:655) and the applicable venue statute (LSA-C.C.P. art. 42), the only forums where the insurers can be sued are the situs of the accident, Avoyelles Parish, or East Baton Rouge Parish. LSA-C.C.P. art. 42(7). We rejected that contention in Davis v. Hanover Insurance Company, 289 So.2d 292 (La.App. 3 Cir. 1974); we held the 1962 amendment (Act 471 of 1962) to the direct action statute (LSA-R.S. 22:655) was intended to incorporate all venue provisions of LSA-C.C.P. art. 42 without the limitations provided by the following articles of the Code of Civil Procedure; venue of a direct action against the insurer exists in the parish of the insured's domicile, even though the insured is not a party defendant.
If a decedent has no domicile, the result would be that every time a personal action is asserted against a deceased party, venue under the direct action statute (LSA-R.S. 22:655) provided by LSA-C.C.P. art. 42(1) would be lost; insofar as that provision is concerned, death of the tort-feasor would prevent the injured party from suing the insurer in the parish of the tort-feasor's domicile.
The purpose of the direct action statute (LSA-R.S. 22:655) was to allow a plaintiff to bring his action against all parties concerned and to settle rights and obligations in one action, venue for which existed in a number of different parishes. Davis v. Hanover Insurance Company, supra. We reject the contention that, as to the insurer, venue at the tort-feasor's domicile is lost when the tort-feasor dies.

2
Both insurers contend that if Mrs. Phillips was domiciled in Rapides Parish (which is denied on the venue argument), then she was not a resident of the household of Mr. Phillipsa requirement to find coverage under Fireman's Fund's and Reserve's policies. They contend that Hobbs is not entitled to have this factual issue decided both waysin the same lawsuit. We reject this attractive argument.
Although a person may have only one domicile, that person may have several residences. Manuel v. American Employers Insurance Co., 228 So.2d 321 (La. App. 3 Cir. 1969); LaFleur v. Seaboard Fire & Marine Insurance Co., 296 So.2d 860 (La. App. 3 Cir. 1974). To maintain a residence a person needs only a place or premises which entitles him to return at his convenience without having to request permission of someone else. Hall v. Godchaux, 149 La. 733, 90 So. 145 (1921); Fielding v. Casualty *36 Reciprocal Exchange, 331 So.2d 186 (La. App. 3 Cir. 1976).
There is no manifest error in the trial court's conclusion that Mrs. Phillips maintained a residence at her previous Mississippi domicile. The Mississippi farm and home was jointly owned by Mrs. Phillips and her husband; she was free to come and go to that home at her pleasure; a great many of her valuable personal belongings remained at the Mississippi household; and she intended to return to that area to do her Christmas shopping.
Appellants cite three cases to support their contention that an estranged wife is not a resident of the household for insurance purposes: Tyler v. Aetna Casualty & Surety Company, 291 So.2d 519 (La.App. 2 Cir. 1974); Roux v. Jersey Insurance Company, 98 So.2d 906 (La.App.Orls.1957); Causey v. Valentine, 271 So.2d 365 (La.App. 2 Cir. 1972). The first two cases are concerned with property loss insurance policies. In both, the wife was separated either judicially, or in fact, when the loss occurred. A holding that the wife was a resident of the household (ergo, a named insured under the policy) would have extended policy coverage to her property at the new residence as well as property at the old residence. These policies were issued and the premiums established with a specific geographic area in mind. The last case involved an automobile policy and it was determined that the insurer was not liable because neither husband nor wife were driving at the time of the accident; therefore, there was no community mission involved. The statement that insurance would not attach because the wife was separated from her husband and therefore not a resident of the household was not essential to that decision.
We find Hartford Insurance Group v. Winkler, 89 Nev. 131, 508 P.2d 8 (1973) to be in point. The facts there parallel those hereeven down to the terminology used on the "resident of the household" clause. In both, the spouse is a named insured if a resident of the household. In Winkler, the court pointed out that the term "resident of the household" had no specific meaning as to place or time when a party would qualify for insurance coverage. Therefore, the phrase was "uncertain and equivocal in phraseology" and should be interpreted in favor of coverage and against the company which drafted the policy. Louisiana also reads policy provisions against the insurance company and follows the rule that exclusionary clauses are to be strictly construed in favor of coverage. Michel v. Washington National Insurance Co., 315 So.2d 863 (La.App. 3 Cir. 1975); Rushing v. Protective National Insurance Company of Omaha, 315 So.2d 876 (La.App. 3 Cir. 1975).
More importantly, we construe ambiguous phrases along the lines intended by the parties to the instrument. LSA-C.C. 1950; Cooling v. United States Fidelity & Guaranty Co., 269 So.2d 294 (La.App. 3 Cir. 1972). Relevant here are the facts that Mrs. Phillips was, admittedly, a resident of the household when the policies were purchased; her Chevrolet station wagon was specifically listed as covered under the policies; Reserve treated Mrs. Phillips as the named insured in their policy when they accepted her signature (and only hers) as named insured to waive all coverage in the event the Phillips' retarded son was engaged in activity inducing liability under the policy. Therefore the coverage purchased was specifically intended by the parties to the instrument to apply to Mrs. Phillips' activities.
There is no manifest error in the trial court's factual determination that it was the intention of the parties that Mrs. Phillips was to be provided coverage under the facts of this case. As the trial court so aptly noted in his reasons for judgment, coverage should not be based upon the serenity, or lack thereof, in a marriage. We agree.

3 and 4
Appellants contend that Louisiana law should not be applied to this case; they suggest that a "false" conflict of law question is presentedsimilar to that found in the Jagers, Romero, and Sullivan cases. *37 Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973); Romero v. State Farm Mutual Automobile Insurance Co., 277 So.2d 649 (La.1973); Sullivan v. Hardware Mutual Casualty Co., 278 So.2d 30 (La.1973).
We note that the "lex loci" principle for application of the law of the forum [Johnson v. St. Paul Mercury Insurance Co., 256 La. 289, 236 So.2d 216 (1970)] was expressly overruled in Jagers. However, the situs of the tort does bear weight in deciding the issue of which state's law should apply. And here, the conduct complained of was perpetrated by a Louisiana domiciliary to the detriment of a party at least temporarily residing in Louisiana. These facts distinguish the instant case from the holdings in Jagers, Romero, and Sullivan.
Appellants further contend that Louisiana law should not apply as to the "family" issues involved in this case. The record establishes that a majority of the Phillips family lived in Rapides Parish, Louisiana; Mr. Phillips was generously supporting his family in Rapides Parish. The majority of this family's "family" business had been extended to and was taking place in Louisiana. The retarded son was placed in a Rapides Parish home for retarded persons one which Mr. Phillips agreed was superior to any they had been able to find. Mrs. Phillips and her daughter were conducting their day to day affairs from a residence in Rapides Parish; the daughter was attending night school in Alexandria. Louisiana has substantial interest in the application of its laws when the conduct of family business within its borders results in injury in Louisiana.
Alternatively, appellants contend the "community mission" doctrine is inapplicable because there existed no Louisiana community of acquets and gains between Mr. and Mrs. Phillips. This contention is without merit. The "community mission" theory is based in agency; not community property law. LSA-C.C. arts. 2315, 2317; Employers Liability Assurance Corp. v. Carter, 227 So.2d 616 (La.App. 3 Cir. 1969); Martin v. Brown, 240 La. 674, 124 So.2d 904 (1960).
For the husband's vicarious liability to attach it is necessary that his authorization be either express or implied. Phillips demonstrated his consent for his wife to look after his family by providing $1200, plus an unlimited charge account, as monthly support for his wife and children. At no time did he object to Mrs. Phillips caring for and having custody of his children; as a fact, he approved it. He testified that he expected his wife to look after their daughter and approved all his wife's moves in that direction. These actions constitute an implied authorization for her to do those things reasonably necessary to care for their daughter.
Louisiana parents owe the duty to care for children of the marriage as their standard of life dictates. LSA-C.C. arts. 216, 224(2), 227. There is ample support for the trial court's finding that Mrs. Phillips was engaged in the discharge of this duty mutually shared by her husband at the time the accident occurred. We agree that this is the authorization necessary for liability to attach. Becnel v. Ward, 286 So.2d 731 (La. App. 4 Cir. 1973). Appellants failed to establish manifest error in the holding that Mr. Phillips is liable on the grounds that his wife was acting as his agent at the time of the accident.

5
All appellants contend Hobbs was driving at the time of the accident. The trial court's finding that Mrs. Phillips was driving is supported by the record. The only eye witness to the incident, Hobbs, maintained this to be a fact at the accident scene and thereafter. Great weight attaches to his testimony. State, Dept. of Highways v. Moity, 276 So.2d 770 (La.App. 3 Cir. 1973). To contradict this, appellants presented expert testimony of Dr. Tonn. He had not visited the scene of the accident and based his opinion on only a few of the many pictures presented in evidence. The trial court attached no importance to his testimony and neither do we. The thrust of his testimony was that the driver of the car *38 would be restrained by the steering wheel and console between the driver and passenger; since Mrs. Phillips was further removed from the driver's seat than Hobbs, she would necessarily have to have been occupying the passenger seat. Both occupants came to rest in the back portion of the Camaro; therefore, the steering wheel and console restrained neither party from eventually coming to rest in the back part of the car.

6
It is contended that Southern Farm Bureau Casualty Insurance Company, which carried $10,000 public liability limits on the Hobbs' Camaro, should pay some of the court costs and the attorney's fees incurred by H. W. Phillips. We reject that contention. Farm Bureau's policy was issued to Hobbs' father. It is difficult to understand how H. W. Phillips could possibly be held to be an "insured" or a "permittee" under that policy. Perhaps the Succession of Lois Phillips could assert a claim on the basis that she was a "permittee" under the policy, but the policy does not bind Farm Bureau to provide legal fees, in addition to its $10,000 limits, for the defense of the husband of a "permittee." Farm Bureau is not liable for court costs because they paid their maximum exposure into the registry of court before trial.

7
Fireman's Fund and Reserve contend that H. W. Phillips' claim was limited by his pleadings to a claim for attorney's fees and a defense on the merits; therefore, he should not have judgment against them for other policy coverages. We reject this argument. Phillips' third-party suit against the insurance companies states both are liable to him for damages he might sustain in connection with the claims asserted against him by Hobbs. The pleaded facts put third-party defendants on notice as to this claim. Cox v. W. M. Heroman & Co., Inc., 298 So.2d 848 (La.1974); LSA-C.C.P. art. 865. Neither Reserve nor Fireman's can claim surprise or lack of notice of this issue.
The fact that this specific relief was not prayed for by third-party plaintiff is not critical to Phillips' claim. Under LSA-C.C.P. art. 862 the trial judge may grant relief to a party as the evidence indicates and is not restricted to the relief prayed for. Desormeaux v. Inexco Oil Co., 298 So.2d 897 at 901 (La.App. 3 Cir. 1974); Johnson v. Fuselier, 302 So.2d 721 at 723 (La.App. 3 Cir. 1974).

8
We recognize the rule that an insurer is not bound to provide counsel for its insured in a contest involving a coverage question. Clemmons v. Zurich General Accident & Liability Insurance Company, 230 So.2d 887 (La.App. 1 Cir. 1969); Landreneau v. United States Fidelity & Guaranty Co., 287 So.2d 554 (La.App. 3 Cir. 1973). Nevertheless, insurers are bound to defend their insured on the merits. Here the insurers provided no defense for their insured; Mrs. Phillips' defense was provided at his own expense.
The issues involving coverage and the liability aspects of this case were so interrelated as to make it impossible to compute an accurate accounting as to what time was spent handling each issue. The trial court made no distinction in computing the time Mr. Phillips' attorney spent on each issue; we see no practical way to make such a distinction. The award of $6,839.50 attorney's fees, computed at the rate of $50 per hour, is reasonable and within the trial court's discretion.

9
We find no merit to the plea of prescription urged by the Succession of Lois Phillips. Prescription is interrupted as to all obligors when the debt involved is owed in solido and service is timely made upon another solidary obligor. LSA-C.C. art. 2097. Fireman's Fund was properly named as a party defendant in Hobbs' original petition. Proper service of process against Fireman's Fund served to interrupt prescription as to the Succession.

*39 10
We find merit to Reserve's contention that it should not be cast to pay court costs and Phillips' attorney's fees. The language of Fireman's Fund's and Reserve's policies is clear. Reserve is bound to defend and pay costs for occurrences which are Not covered by Fireman's Fund's underlying insurance. Since Fireman's Fund is bound to defend, it is their duty to bear the entire costs of the defense when the occurrence is within the terms of their policy. Therefore, Reserve may not be cast in judgment for court costs or for Phillips' attorney's fees. American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969).

11
Appellants have failed to establish an abuse of the trail court's discretion in assessing the amount to be awarded Hobbs. Prior to the accident Hobbs was a healthy young man; at trial several years later, he was 22 years old. Because of the accident he has at least a 30 percent disability of the body as a whole; this is related to his temporary paralysis from the waist down the laminectomy of November 29, 1971 and spinal fusion of January 10, 1972. In addition to this he has permanent dysfunction of both his bladder and bowels. We will not detail the long list of Hobbs' complaints and the extensive treatments provided.
Appellants do not contend the special damages amounting to $9,423.34 were excessive. Most of these were for medical treatments. The $225,000 awarded by the trial court in general damages is well within the trial court's discretion.
The trier of fact is granted much discretion in the award of general damages; this is particularly so in cases where there is a loss of gratification of intellectual or physical enjoyment, or other losses of lifestyle which cannot really be measured definitively in terms of money. LSA-C.C. art. 1934(3); Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Simmons v. Travelers Insurance Company, 295 So.2d 550 (La.App. 3 Cir. 1974).

12
Hobbs did not name Reserve as a party defendant. Reserve was made defendant only by Phillips' third-party action. Therefore, the judgment in favor of Hobbs and against Reserve must be set aside and reversed. Reserve is liable only to H. W. Phillips, the party that sued Reserve. Judgment against one not a party to an action cannot be given effect. Freeman v. McKay 306 So.2d 420 (La.App. 3 Cir. 1975).
Accordingly, the trial court judgment is set aside and reversed insofar as it taxes court costs and attorney fees to Reserve Insurance Company; it is set aside and reversed insofar as it awards judgment to plaintiff Hobbs against Reserve Insurance Company; it is set aside and reversed insofar as it appears to relieve Fireman's Fund for liability for attorney fees; otherwise the judgment is affirmed. Specifically, we affirm the amount of the award to Hobbs in general and special damages, and the amount of attorney's fees awarded to H. W. Phillips together with legal interest thereon from date of judicial demand; we affirm the judgment in favor of Hobbs and against H. W. Phillips and the Succession of Lois Phillips and their insurer Fireman's Fund; we affirm the judgment in favor of H. W. Phillips holding Fireman's Fund and Reserve liable to him up to the amounts Phillips is cast to pay Hobbs, but limited to their respective policy limits. All costs of court and costs of defending H. W. Phillips are taxed to Fireman's Fund; this to be paid by Fireman's Fund in addition to its $100,000 policy limits, which limits apply only to their exposure for general and special damages due to Hobbs. Legal interest on the amounts each party is cast to pay is owed by the respective parties and is due from date of judicial demand, until paid. Costs of this appeal are taxed to Fireman's Fund.
AMENDED; and, as amended, AFFIRMED.
NOTES
[*] Watson, J., voted for a rehearing, limited to the question of granting additional attorney's fee for appeal.