WALTZER, Judge.
This is an appeal from a May 22, 1991 judgment of the Civil District Court, the Parish of Orleans, the Honorable Max N. Tobias, Jr., Judge presiding, granted in favor of the Defendant, Wawanesa Mutual Insurance Company, and against its own insured, the Plaintiffs, Mrs. Jeltje Van Der Ploeg Schroen and her children, granting defendant’s exceptions of insufficiency of service of process and lack of personal jurisdiction. From that judgment, the widow and children of Ernest Schroen appeal.
Mr. Ernest David Schroen and his wife Mrs. Jeltje Van Der Ploeg Schroen of Edmonton, Alberta, Canada were staying at the Jude Travel and Trailer Park at 7400 Chef Menteur Highway in New Orleans.
At 7:15 a.m. on Monday, January 22, 1990, Mr. Schroen was returning to the Trailer Park by walking across the westbound lanes of Chef Menteur Highway at Lonely Oaks Drive. Mr. Schroen had crossed the first two westbound lanes and was attempting to cross the third when he was struck by a 1979 Oldsmobile automobile bearing the Louisiana license number 144C440 and operated by the defendant Gikimon T. Daison. Mr. Daison was covered by a policy of insurance issued by Liberty Lloyds.
As a result of the accident, Mr. Schroen suffered broken bones and internal injuries and was hospitalized at Pendleton Memorial Methodist Hospital Intensive Care Unit from the date of the accident on January 22 until February 10, 1990. On February 10, 1990, Mr. Schroen was transferred by air ambulance from Pendleton Memorial Methodist Hospital to the D.I.E. Misericordia Hospital in Edmonton, Alberta, Canada. Upon arrival he suffered pulmonary throm-boembolism and died.
At the time of the accident, Mr. Schroen and his wife had paid for and were covered by a policy of insurance issued by Wawane-sa Mutual Insurance Company. The Waw-anesa policy included an uninsured motorist provision.
On September 4, 1990 plaintiffs filed suit against Mr. Daison, his insurer Liberty Lloyds and their own uninsured motorist carrier, Wawanesa Mutual Insurance Co. Liberty Lloyds and Wawanesa were served through the Secretary of State’s Office. Domiciliary service was attempted on defendant Daison who moved from his last known address 4 to 6 months prior to the filing of suit and has not been located. We further note that Liberty Lloyds financial stability is questionable. On September 28, 1990 Liberty Lloyds filed an answer. On November 12, 1990, Wawanesa filed an exception of insufficiency of service of process and lack of personal jurisdiction. On May 17, 1991 a hearing was held on the exception. On May 22, 1991 the trial court rendered the following judgment:
“IT IS ORDERED, ADJUDGED AND DECREED that the exceptions of insufficiency of service of process and of lack of personal jurisdiction are sustained.”
The trial judge provided the following written reasons for judgment:
“On 22 January 1990, Ernest Schroen, a Canadian, was hit by Gikimon Daison’s vehicle as Schroen was crossing Chef Menteur Highway. Schroen sustained injuries and on 10 February 1990, as he was being transferred to a hospital in Canada, suffered a pulmonary thrombo-embolism and died. Schroen has sued his uninsured motorist carrier, Wawane-sa Mutual Insurance Company, a Canadian insurer which is not qualified to do business in Louisiana.
Wawanesa does not transact business in Louisiana; although service was effected pursuant to R.S. 13:3201, service was not effected through the methods provided by the Hague Convention. Accordingly, service is insufficient.
The accident occurred here. At the time Schroen was a resident, albeit temporary, in the state and staying in a trailer park on Chef Menteur Highway. The injuries sustained occurred here. *1082 Under Jones v. MFA Mutual Insurance Co., 398 So.2d 10 (La.App. 3 Cir.1981) and in light of Asahi Metal Industry Co. v. Superior Court of CA, 480 U.S. 102, 107 S.Ct. 1026 [94 L.Ed.2d 92], the Court feels the necessary minimum contacts are absent for the purposes of a Louisiana court to have personal jurisdiction in this matter. No actual connexity except the injury occurring here vests this Court with the requisite jurisdiction over a suit between a Canadian citizen and his Canadian insurer.”
On appeal, plaintiff-appellant raises the following specification of error:
“The issue raised in this appeal is whether or not the Civil District Court for the Parish of Orleans has personal jurisdiction over the Wawanesa Mutual Insurance Company, a Canadian automobile liability and uninsured motorist insurer, under the facts of this case.”
Plaintiff has not briefed and has not raised as a specification of error the issue of insufficiency of service of process. We note that any problem with the prior service is easily curable by effectuating proper service under the Multilateral Service Abroad of Judicial and Extrajudicial Document Treaty, 20 U.S.T. 361, such that the prior insufficient service would not be fatal to the instant suit.
Normally when a tortfeasor has disappeared and the tortfeasor’s insurer is insolvent, the injured policyholder looks to his own uninsured or underinsured motorist (hereinafter “UM”) insurance. That, after all, is the purpose of UM insurance, to protect us when the tortfeasor in the other vehicle injures us and has little or no insurance. That is why a policyholder pays a UM premium — to protect himself. If he would not be protected from uninsured motorists, then there is no reason for him to buy UM coverage.
In Elledge v. Warren, 263 So.2d 912, 917 (La.App. 3rd, 1972) writ refused 262 La. 1096, 266 So.2d 223 (La., 1972) the court reviewed the legislative history of the UM statutes:
“There existed in our society a situation whereby financially irresponsible people could acquire and drive vehicles capable of great damage. Because of their financial irresponsibility and lack of insurance, they were unable to respond to their victim in damages under LSA-C.C. Art. 2315. This created a class of injured people in our state who were left without recourse and who, without some form of relief, might become wards of the state. Insurance plans (such as the financial responsibility law) oriented toward coercing motorists to purchase insurance or removing them from the highways if they did not, proved ineffective. Other plans had to be developed.
In an effort to forestall plans distasteful to itself, the insurance industry set forth a plan of compensation for the innocent victims of the uninsured motorists. In surveying the problem, it became evident to our legislature that the source of the harm was a danger peculiar to the use of the automobiles and the industry most capable and most interested in resolving the problem was the one most closely related thereto in terms of economics and self interest — the automobile insurers. Therefore our legislature seized upon the solution set forth by the insurance industry and made the offering of uninsured motorist protection a mandatory condition precedent before the companies could conduct business in Louisiana.
The evil and the injuries existed. By the terms of our statute, whenever evil perpetuates itself upon a policy holder availing himself of uninsured motorist coverage (or insureds under his policy), he is to be compensated for his injuries. In Booth v. Fireman’s Fund Insurance Company, 253 La. 521, 218 So.2d 580, 583 (1969), our Supreme Court concluded ‘that the intent of our uninsured motorist statute and the policy endorsement issued thereunder is to afford protection to the insured when they become the innocent victims of the negligence of uninsured motorists.’ See also Valdez v. Federal Mutual Insurance Company, 272 Ca.App.2d 223, 77 Cal.Rptr. 411, 413 (1969). ‘... Such statutes must be lib *1083 erally construed to carry out this objective of providing compensation for those injured through no fault of their own.’ ******
There is no requirement in the statute that the insured have any relation, at the time of the accident, with any vehicle he owns and that is insured with the insurer. The uninsured motorists protection covers the insured and the family members while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch. See Travelers Indemnity Company v. Powell, 206 So.2d 244, 246 (Fla. Dist.Ct. of App. 1st Dist.1968) ‘... the exclusion clause here (identical to the one before us) is an invalid restriction because it is not the intent of the statute to limit coverage to an insured by specifying his location or the particular vehicle he is occupying at the time of injury. The statute states its purpose thusly: “This so-called uninsured protection is limited personal accident insurance ...’ Motorists Mutual Insurance Company v. Bittler, 14 Ohio Miscz. 23, 235 N.E.2d 745, 750-751 (1968).”
In the instant case, Mr. and Mrs. Schroen’s tortfeasor has disappeared and his insurer is insolvent. If the widow Schroen cannot recover under their own UM coverage, for which they have paid these many years, they will be left destitute and the premiums they have paid all of these years will have been taken for no coverage rendered at the moment when it most mattered. And this will be done to the Schroens by their own insurance company.
The Schroen policy with Wawanesa provides:
"1. TERRITORY
This policy applies only while the automobile is being operated, used, stored or parked within Canada, the United States of America or upon a vessel plying between ports of those countries.
We note that the policy on its face would provide for coverage. If the Schroen’s drove their own car and trailer to the trailer park, or their own recreational vehicle or rental vehicle to the trailer park, then the policy applies. Arguably, if the Schroens did not drive, but rather left their vehicle parked in Canada, then the policy would apply under the language “or parked in Canada”. Three vehicles are listed on the Schroen’s declaration page, a 1984 Dodge, a 1981 Toyota, and a 1976 Chevrolet. No further descriptions are given of the vehicles, hence we are unable to determine if they are cars, trucks, or recreational vehicles.
The Schroens carried 1 million dollars worth of coverage on three vehicles for an annual premium of $1,036.00 at the time of the accident.
The trial court found that there was no personal jurisdiction under Jones v. MFA Mutual Insurance Co., 398 So.2d 10 (La. App. 3 Cir.1981) writ denied 399 So.2d 586 (La., 1981). In Jones at 12-13, the court stated:
“... the record reflects that there has been no ‘minimum contacts’ between Standard Fire and the state of Louisiana to satisfy due process requirements, (citations omitted) Standard Fire has had no contact whatever with the state of Louisiana. Its only contact is that it insures persons whom it is foreseeable will travel to Louisiana and will be involved in litigation in Louisiana. The United States Supreme Court in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), held that ‘foreseeability’ alone does not provide sufficient minimum contacts to support jurisdiction under the Due Process Clause.”
The court in Jones also said:
“Neither can personal jurisdiction over Standard Fire be based on the ‘Louisiana Motorist Longarm Statute’, LSA-R.S. 13:3474. This statute provides that a non-resident and his insurer, by operating a motor vehicle on the public highways of Louisiana, are deemed to have submitted to the jurisdiction of this state and to have appointed the Secretary of State as their agent for service of process. This statute is inapplicable to the *1084 instant case because it has been stipulated that Standard Fire’s insured, Luther Thomas Jones, was not the operator of the vehicle involved, but a guest passenger.” (At 12).
The trial judge was correct in his finding that the Schroens were residents of Louisiana at the time of the accident. In Dofflemyer v. Gilley, 360 So.2d 909, 912 (La.App. 3rd, 1978) appeal after remand 378 So.2d 440 (La.App. 3rd, 1979), writ granted 379 So.2d 1102 (La.) judgment reversed on other grounds 384 So.2d 435 (La., 1980) on remand 395 So.2d 403 (La.App. 3rd, 1981), the court stated:
“ ‘Residence’, on the other hand, is not a specific legal term. It is a term in common usage and has a variety of meanings. One may have residence in a home, institution, town, city, parish, state, country, continent, etc. As has been noted in several cases, the term is nebulous and really has no precise meaning. E.g., Vinet v. Hano, 281 So.2d 183 (La.App. 4th), writ denied 283 So.2d 501 (La.1973); Harrison v. Commission Council ofBogalusa, 169 So.2d 159 (La. App. 1st, 1964). The major distinction between domicile and residence lies in the fact that although a person may have only one domicile, he may have several residences. Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 178 So.2d 238 (1965); Branam v. Traders and General Insurance Company, 344 So.2d 1073 (La.App. 3rd, 1977); Ehrhard v. State Farm Mutual Automobile Insurance Company, 274 So.2d 911 (La.App. 1st, 1973), application denied 279 So.2d 202 (La.1973).”
In Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App. 3rd, 1976) the court stated:
“A person may have only one legal domicile at the same time, but he may have more than one residence. LSA-C.C. Article 38; Manuel v. American Employment Insurance Company, 228 So.2d 321 (3rd Cir., La.App., 1969); La-Fleur v. Seaboard Fire & Marine Insurance Company, 296 So.2d 860 (3rd Cir., La.App., 1974), writ refused 300 So.2d 185 (La.1974).
‘Resident’ is defined in Webster’s Third New International Dictionary, 1966 as ‘one who dwells in a place for a period of some duration.’ However, ‘[wjhether a person is or is not a resident of a particular place is a question of law as well as fact, and is to be determined from all of the facts of each particular case ... ’ Ladner v. Andrews, 216 So.2d 365 (3rd Cir., La.App., 1968); Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 178 So.2d 238 (1965).
‘The question is one largely of intention, and the intention of a person, in that respect, is determined by his expressions thereof at times not suspicious and his testimony, when called on, considered in connection with his conduct and the circumstances of his life.’ Stavis v. Engler, 202 So.2d 672 (4th Cir., La.App., 1967).
In Hobbs v. Fireman’s Fund American Insurance Companies, 339 So.2d 28, 35-36 (La.App. 3rd, 1976, writs denied 341 So.2d 896 (La., 1977), the court further noted:
“... To maintain a residence a person needs only a place or premises which entitles him to return at his convenience without having to request permission of someone else. Hall v. Godchaux, 149 La. 733, 90 So. 145 (1921); Fielding v. Casualty [citation omitted] ... We find Hartford Insurance Group v. Winkler, 89 Nev. 131, 508 P.2d 8 (1973) to be in point ... In Winkler, the court pointed out that the term ‘resident of the household’ had no specific meaning as to place or time when a party would qualify for insurance coverage. Therefore, the phrase was ‘uncertain and equivocal in phraseology’ and should be interpreted in favor of coverage and against the company which drafted the policy.”
Thus the instant case is a situation wherein a Louisiana resident is insured by a non-resident foreign insurance company which is not authorized to do business in Louisiana and which has collected some of its premiums and delivered the policy in *1085 another jurisdiction wherein it was [presumably] properly registered to do business, but where the policy upon its face would provide coverage in this state. Additionally, we do not know if the Schroens mailed premium payments from their Louisiana residence. If they did mail payments from Louisiana, then R.S. 22:1249 may apply-
In the instant case, the deceased was staying at a trailer court. The record is silent as to whether or not the deceased drove his vehicle and trailer or recreational vehicle or rented vehicles to or in Louisiana. If they drove vehicles in Louisiana, then R.S. 18:3474 may apply.
Finally, the Schroens make allegations that may form the foundation of a “detrimental reliance” and/or a “lulling” action against their insurer, Wawanesa. If so, then the Schroens should file such an action.
Accordingly, we remand this matter to the trial court for a hearing and presentation of evidence on the open issues.
For the reasons discussed, the judgment of the district court is affirmed in part, reversed in part and remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
LOBRANO, J., concurs with written reasons.
JONES, J., concurs in results with statement.