AETNA LIFE AND CASUALTY CO.

v.

Concetta CARRERA, Administrator of the Estate of Mark Read.

No. 88–351–Appeal.

Supreme Court of Rhode Island.

July 10, 1990.

James Marusak, Gidley, Lovegreen & Sarli, Providence, for plaintiff.

Arlene M. Violet, Arlene Violet & Law Associates, Barrington, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from a declaratory judgment entered in the Superior Court in favor of the plaintiff insurance company. We affirm. The facts insofar as pertinent to this appeal are as follows.

In 1985 plaintiff Aetna Life and Casualty Company (Aetna) issued an automobile policy to defendant Concetta Carrera who resides in the town of Johnston in the State of Rhode Island. The policy provided uninsured-motorist coverage to persons covered under its provisions.

The defendant is the mother of Mark Read, a deceased twenty-seven year-old man. On December 17, 1985, Read was in an automobile collision in the State of Florida. After being transferred to Rhode Island Hospital, Read died on May 9, 1986, as a result of injuries from the December collision. Because that collision involved an uninsured vehicle, Carrera, the administrator of Read's estate, made a demand to submit her claim to arbitration in accordance with the provisions of Aetna's policy governing uninsured-motorist coverage. Carrera claimed that Read was a covered person under the Aetna policy and entitled to uninsured-motorist benefits.

On January 27, 1987, Aetna filed an action in the Superior Court, seeking a stay of the arbitration proceedings and a declaration that under the provisions of the policy, the decedent was *not* a resident of Carrera's household at the time of the accident and therefore did not qualify as a covered person. A stay of arbitration was ordered on February 12, 1987. After a five-day trial a justice of the Superior Court found that Mark Read "was not a resident of the household of Concetta Carrera on December 17, 1985 and * * * was not a covered person" entitled to uninsured-motorist benefits. The defendant filed a notice of appeal to this court.

The record indicates that during the year 1985, Read lived in several places. From early January until sometime in late March or April 1985, Read moved into an apartment in Cranston, Rhode Island with his girlfriend. Although at her deposition Carrera testified that her son still lived with her in Johnston during this time and only occasionally stayed overnight at his girlfriend's apartment, Read filed a change of address with various entities to reflect his Cranston address. Moreover, the landlord for the Cranston apartment testified that he rented the unit to both Read and his girlfriend. Read ceased living with his girlfriend in late March or early April 1985, and it is unclear where Read lived directly thereafter.

Carrera filed a larceny complaint against her son on June 14, 1985. At the time Carrera indicated to the Johnston police that she did not know where Read lived, although at trial she maintained that this was a lie designed to protect her son from arrest. At trial she claimed that Read was actually living with her when she filed the complaint against him.

The record establishes that before and during 1985, Read had problems with the law, including one or more convictions. He was on probation and making restitution payments to the Superior Court registry. The testimony of Read's girlfriend suggested that he occasionally lived on the streets due to his drug abuse problem. Read suffered from drug addiction and had previously spent a significant amount of time in a drug rehabilitation center during 1982 and 1983, which facility he left without the consent of the staff. On July 5, 1985, Read again entered a drug rehabilitation center where he stayed until July 12, 1985, again leaving without staff consent.

Although the testimony at her deposition was to the contrary, at trial Carrera stated that Read did not return to her home after he left the drug rehabilitation center in July of 1985. Less than one week after he left the rehabilitation center, Read's probation officer sought and obtained a warrant for his arrest because the officer had been unable to locate Read.

In August the Superior Court registry contacted Carrera in an attempt to locate Read. There had been a lapse in the restitution payments Read had been making, and on August 14, 1985, a second warrant issued for Read's arrest relating to this default. At the time of inquiry Carrera denied knowing Read's whereabouts, although at trial she again claimed that this was another lie told to protect her son. According to Carrera, Read knew of the outstanding arrest warrants and had fled the State of Rhode Island. He spent a short time in Las Vegas, Nevada, and then traveled to Florida to live with Carrera's sister.

Carrera maintained that Read was only visiting relatives in Florida and not living there. While staying at his aunt's house, however, Read secured employment in Florida, listing the city of Destin as his address on the employment application and indicating that he was available full time. Sometime during his five-month residence in Florida, Read's estranged wife moved from Rhode Island and lived with him in an unsuccessful attempt to reconcile. While living in Florida, Read allowed his Rhode Island vehicle registration to lapse and his Rhode Island driver's license to be suspended. It was during December of 1985 that Read was involved in the automobile collision that resulted in his death.

The uninsured-motorist provisions of the Aetna policy define "covered persons" as meaning "you [the insured] or any family member." The term "family member" is defined in the policy as meaning "a person related to you by blood, marriage or adoption who *is a resident of your household* * * *." (Emphasis added.) Whether Read was a resident in Carrera's household at the time of the accident is the sole issue in this controversy. In her appeal defendant raises two main arguments relating to her general claim that Aetna failed to meet its burden of proof that Read was not a resident of Carrera's household at the time of the accident. We shall address each issue separately below.

## I

## DID THE TRIAL JUSTICE MISCONSTRUE THE POLICY LANGUAGE?

The defendant Carrera contends that the trial justice below erred as a matter of law when he found the policy phrase "is a resident of your [the insured's] household" to be unambiguous in its meaning. The defendant further alleges that because the trial justice's interpretation was clearly wrong, he misconceived or overlooked material evidence. *See Rego Displays, Inc. v. Fournier,* 119 R.I. 469, 475, 379 A.2d 1098, 1102 (1977). We would agree with defendant that the trial justice's interpretation of the policy was misplaced in this instance. This court is nevertheless compelled to the conclusion that Read was not a resident of Carrera's household for the reasons set forth below.

In his decision the trial justice construed the phrase "is a resident of your household" as used in the context of Aetna's policy as follows:

"This language, in the court's mind, negates any possibility of a covered person having two residences and clearly indicates an intention on the part of the insurance company to limit the coverage to certain people who are living in the [insured's] home at the time of the accident."

At oral argument defendant argued that in the trial justice's decision the policy phrase "a resident of your household" was misinterpreted so that "residence" became synonymous with the term "domicile" in his determination that Read was not a resident of Carrera's household at the time of the accident. We must disagree. In *Flather v. Norberg,* 119 R.I. 276, 281, 377 A.2d 225, 228 (1977), this court noted that although the terms "domicile" and "residence" share some similarities and are often used interchangeably, the term "domicile" has a fixed legal meaning. The meaning of the term "residence", however, must be derived in part from the context in which it is used. *Id.* In Black's Law Dictionary, 1176 (West 5th Ed.1979), the term "domicile" is contrasted with the term "residence" as follows:

"As 'domicile' and 'residence' are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for *a person may have two places of residence,* as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home." (Emphasis added.)

Even though the trial justice's conclusion regarding the residence requirement was misplaced, it does not rise to the level of requiring domicile rather than residence as a condition precedent to coverage. As we view the trial justice's interpretation of the policy language, the coverage issue was not determined by fixing Read's domicile but rather by ascertaining where Read actually was residing at the time of the accident.

■ Having examined the policy, however, we must respectfully disagree with the trial justice's conclusion that it was the intent of the insurer to require actual residence or physical presence in fact as a condition precedent to coverage. If it was, indeed, the intent of the insurance company that coverage be limited only to those individuals in actual residence in the insured's household at the time of the accident, then certainly such intention must be indicated with *greater clarity than* the mere use of the present tense in the policy provision governing uninsured-motorist coverage. This is in keeping with the general principle favoring broad coverage.

The trial justice's narrow interpretation of the policy language would allow coverage for Read only if he actually resided in the insured's household at the time of the accident. The defendant argues that Read was a visitor to his aunt's household in Florida and a resident of his mother's house in Rhode Island. Alternatively defendant contends that even if Read was a resident of Florida at the time of the accident, this fact does not prevent him from also being a resident of defendant's household. We agree that the residence clause

in Aetna's policy should be liberally construed in accordance with the general rule that one may have more than one residence.

We are of the opinion that the use of the present tense in the phrase *"is* a resident of your household" (emphasis added) is merely meant to require that a person allegedly covered under the policy must *presently maintain* a residence in the insured's household, whether it be a constructive or an actual residence, at the time of the incident giving rise to the claim. In this sense it is intended to exclude from coverage one who no longer is, but has in the past been, a resident in the insured's household. This conclusion naturally flows from the fact that like most policies of insurance, the Aetna policy is written in the present or future tense. The trial justice's interpretation of the policy language should be carefully contrasted with the alternative view adopted by this court, that coverage will be afforded to Read if, at the time of the accident, he was a resident of the insured's household, regardless of whether he also maintained other residences.

## II

### DID THE TRIAL JUSTICE FAIL TO CONSIDER DECEDENT'S INTENTIONS?

The defendant also argues that the trial justice was clearly wrong in his declaration that "I am not satisfied that intention [of the decedent] is controlling in any determination of [his] residence." From this statement defendant contends that the trial justice did not consider relevant the evidence of Mark Read's alleged intention to return to Rhode Island and to reside with defendant.

Black's Law Dictionary, 1177 (West 5th Ed.1979), defines the term "resident" as follows:

"Any person who occupies a dwelling within the State, has a present intent to remain within the State for a period of time, and manifests the genuineness of that intent by establishing an ongoing

physical presence within the State together with indicia that his presence within the State is something other than merely transitory in nature."

In *Flather v. Norberg,* 119 R.I. 276, 377 A.2d 225 (1977), this court examined the term "permanent place of abode" as used in a statute governing personal income. In analyzing that term, we found the term "residence" to be pertinent and of similar meaning. We find that the criteria utilized in the *Flather* analysis are likewise relevant to our discussion of the term "resident" in the case before us. These criteria include:

"(1) the amount of time [one] spends in the locality (2) the nature of [one's] place of abode (3) [one's] activities in the locality and (4) [one's] intentions with regard to the length and nature of [one's] stay." 119 R.I. at 283, 377 A.2d at 229.

It is clear that under both the Black's Law Dictionary definition and the *Flather* criteria, defendant is entirely correct in her assertion that the decedent's intention is pertinent to a determination of residence. Notwithstanding her correctness about the elements or definition of the term "residence", however, we do not interpret the trial justice's statement to mean that he came to the conclusion that the evidence of Read's intentions was irrelevant. In the context of the entire decision, we believe the trial justice's statement meant that the decedent's intention was not the single dispositive factor on which this case would be decided.

We further believe that it is a mischaracterization of the trial justice's decision to assert that he did not weigh and consider evidence of the decedent's alleged intentions concerning his residence. A great deal of evidence was presented by both parties concerning Read's alleged residence in Carrera's household at the time of the accident. The bulk of the evidence tending to confirm Read's intention to continue his residence in his mother's home, however, came from Carrera's own testimony, and the trial justice specifically noted in his decision that defendant lacked credibility. This finding is clearly sup-

ported by the several deficiencies and inconsistencies in her testimony noted in the decision.

The trial justice's decision indicated that in the totality of the circumstances, it was unlikely that the decedent intended to return to Rhode Island.

"A resident in the household on December 17, 1985 cannot be construed to include a 27 year old son of an assured, married, although estranged, who had been living and working in the State of Florida and who went to that state in August 1985 and who had left the State of Rhode Island in violation of the terms of [his] probation and for whom a warrant was outstanding, who attempted reconciliation with his wife in Florida and *who had given no greater indication of an intention to return to Rhode Island than to say that he was coming home for the holidays."* (Emphasis added.)

This statement confirms that the trial justice did, indeed, consider Mark Read's intentions in determining his residence but concluded that the decedent no longer intended to reside in his mother's household or, indeed, at any location in Rhode Island. This finding is supported by the fact that when Read became aware of the outstanding warrants for his arrest, he chose to flee from the State of Rhode Island and establish a residence in another jurisdiction, namely, the State of Florida. More so than any other single fact, we find that Read's fugitive status and flight from the State of Rhode Island emphasized that at the time of the accident, he had no intention of returning to his mother's household or to this jurisdiction.

The defendant also argues that the trial justice did not properly construe evidence of the decedent's past residence in Carrera's home. The trial justice did find that Read "generally used his mother's * * * address as his mailing address and where he lived when he was not elsewhere." The evidence suggests that during the three-year period prior to the decedent's move to Florida, it is highly probable that Read did occasionally maintain a residence in his mother's household. We conclude that the trial justice did consider this evidence but found that "a statement of facts agreed to and not disputed for the most part, makes clear the *tenuous* relationship which Mark had with his mother's home * * *" at the time of the accident. (Emphasis added.)

The meaning of the term "residence" or "resident" is a mixed question of law and fact. In order to determine if a person is a resident of a particular household, the court must consider whether in the totality of the circumstances that person maintains a physical presence in the household with intent to remain for more than a mere transitory period, or that person has a reasonably recent history of physical presence together with circumstances that manifest an intent to return to the residence within a reasonably foreseeable period. Thus, for example, a college student who has resided in the parental home may be physically present at another location for educational purposes, but circumstances indicate that the student will return to the parental home when the school term is completed. In the case at bar the evidence falls far short of establishing either component of this general rule.

We agree with the conclusion of the trial justice that "the person claimed to be covered must fit the definition *at the time of the accident* * * *." (Emphasis added.) When this principle is applied to the facts of this case, where it has already been determined that on the date of the collision the decedent did not intend to return to his mother's household, his past physical presence or past residence there becomes irrelevant. The fact that Carrera would always welcome Read does not, without more, make him a resident of her household.

The trial justice specifically found that at the time of the accident Read had no intention of returning to Rhode Island or to his mother's house, except possibly to spend the holidays. This finding was amply supported by the evidence and cannot be disturbed on review. It is therefore impossible under any construction of the term "resident" to find that he was a resident of Carrera's household at the time of the accident. Read lacked both the physical pres-

ence and the objective manifestations of intention to return in the foreseeable future to a residence in his mother's household. Accordingly, it is unnecessary for us to address the other criteria set forth in *Flather, supra,* as they apply to the facts of this case.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment entered below is affirmed, and the papers in the case may be remanded to the Superior Court.