Michael J. BARRICELLI et al.

v.

AMERICAN UNIVERSAL
INSURANCE COMPANY.

No. 89–391–Appeal.

Supreme Court of Rhode Island.

Dec. 21, 1990.

Ronald J. Resmini, Providence and Augustus Charos, Jr., Warwick, for plaintiff.

Berndt W. Anderson, Roberts, Carroll, Feldstein & Peirce, Providence, for defendant.

OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the plaintiff's appeal from a decision of the trial justice granting the defendant's motion for summary judgment. We affirm.

On June 5, 1987, Gina Barricelli (Gina) was killed in a one-vehicle automobile accident. Gina was a passenger in an automobile driven by her friend Eric Lupoli. The owner of the automobile, Patricia A. Lupoli, had a $300,000 automobile insurance policy with Merchants Insurance Group at the time of the accident. Michael J. Barricelli (Gina's father) and Deborah Barricelli Larsen (Gina's mother), plaintiffs in this matter as co-administrators of Gina's estate, settled their claim against Merchants Insurance Group for $297,000.

Subsequently plaintiffs sought additional recovery for Gina's death under the uninsured/underinsured-motorist provision of Gina's mother's insurance policy issued by American Universal Insurance Company (American), defendant in this matter. On October 7, 1988, plaintiffs commenced this action, seeking declaratory relief in regard to their claim against American. American moved for summary judgment, claiming that Gina was not a "resident" of her mother's household at the time of the accident as required by American's policy. The trial justice agreed and granted American's motion for summary judgment.

On appeal, plaintiffs argue that the trial justice incorrectly ruled that Gina was not a "resident" of her mother's household at the time of the accident as required by American's policy. The pertinent parts of American's policy read as follows:

"PART C.—UNINSURED MOTORIST
COVERAGE
INSURING AGREEMENT

A. We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury':

1. Sustained by an 'insured'; and
2. Caused by an accident.

\* \* \* \* \* \*

B. 'Insured' as used in this Part means:
1. You or any 'family member.'"

American's policy defines "family member" in the Definitions section as:

"F. 'Family member' means a person related to you by blood, marriage or adoption *who is a resident of your household.* This includes a ward or foster child." (Emphasis added.)

Our analysis of the issue on appeal must begin with a factual examination of Gina's living arrangements at the time of the accident. These facts are undisputed by the parties. At the time of the accident plaintiffs were divorced pursuant to an October 1980 Family Court decree that awarded custody of Gina to her mother. After plaintiffs' divorce Gina lived with her mother until 1984, during which time Gina's father regularly visited her and paid $15 weekly child-support payments to Gina's mother.

Gina permanently moved in with her father and his new family after leaving her mother's household in 1984. At this time plaintiffs agreed that Gina's father would discontinue his $15 weekly child-support payments to Gina's mother in lieu of his caring for Gina. The October 1980 Family Court decree awarding custody to Gina's mother, however, was not judicially modified. Gina, her father, and his new family later moved in August 1985 to a new home in which Gina was given her own room. Gina registered for and attended school from this address, received her mail at this address, and also kept most of her clothing and personal belongings there. Gina's father also claimed Gina as a dependent on his tax returns from the time she moved in with him in 1984.

Gina's relationship with her mother was not totally severed after she moved in with her father. Gina and her mother maintained a structured, albeit intermittent, relationship. Gina would visit her mother once during the week, and she would sleep on a pull-out sofa in her mother's living room every other weekend. Gina also kept one or two changes of clothes at her mother's house in addition to a few personal belongings, although it remained necessary for Gina to pack a suitcase to stay with her mother on the alternate weekends.

■ At the outset we agree with plaintiffs' contention that it was possible for Gina to be a "resident" of both plaintiffs' households at the time of the accident. We recently stated in *Aetna Life and Casualty Co. v. Carrera,* 577 A.2d 980 (R.I.1990), that a residency clause in an insurance policy—identical to the one in the case before us—should be liberally construed in accordance with the general rule that a person may have more than one residence. In *Carrera* we acknowledged the possibility of a "constructive" residency while refuting the belief that a person must physically and continuously live in the insured's household at the time of the accident to qualify as a "resident." *Id.* at 983–84.

■ However, despite our liberal construction of an identical residency clause in *Carrera,* we recognized that not all types of contact with an insured's household make a person a "resident." Thus, we stated in *Carrera* that the test for determining whether a person is a "resident" is as follows:

"The meaning of the term 'residence' or 'resident' is a mixed question of law and fact. In order to determine if a person is a resident of a particular household, the court must consider whether in the totality of the circumstances that person maintains a physical presence in the household with the intent to remain there for more than a mere transitory period, or that person has a reasonably recent history of physical presence together with circumstances that manifest an intent to return to the residence within a reasonably foreseeable period." *Carrera,* 577 A.2d at 985.

We believe that the totality of the circumstances concerning Gina's physical presence in her mother's household fails to establish that Gina's visits with her mother were for more than a mere transitory period. Gina's infrequent overnight visits coupled with the nature of such visits, as shown by her sleeping on a pull-out sofa and the necessity of her bringing a suitcase, evidence the impermanence of Gina's physical presence in her mother's household. In addition, with the plaintiffs having informally modified the 1980 Family Court decree awarding custody of Gina to her mother, that decree's custody award of Gina to her mother is not a relevant factor in this analysis. Thus, in applying the *Carrera* test of residency to the undisputed facts of the case before us, we conclude as a matter of law that Gina was not a "resident" of her mother's household at the time of the accident as required by American's policy.

For these reasons the plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.